Good morning, Your Honor. My name is Hughes Ball. Excuse me, I've got a frog in my throat. Do you want to take some water up there? No, I'm okay, Your Honor. I represent the appellant Albert Parris in this matter. This case presents the issue to the court of whether documents prepared as part of an embezzlement scheme by a bank employee can qualify as documents prepared in the ordinary course of business for admission to evidence under an exception to the hearsay rule that will allow the jury to consider the contents of the documents for the truth of the matter asserted. The bottom line, I think, is that such documents lack the inherent trustworthiness required by the rule. They cannot be considered to be documents prepared in the ordinary course of business and, as a result, should not enter evidence that way. Now, in order to... Could I just ask you a question? That's what I thought your argument was. It has some novel appeal, but I have to kind of get back to the practicality, which is, you know, any time you're defrauding the bank and you're doing it through documentary or digital means, which is generally how it's done, it's like you get out of jail free card because none of the documents can come in against you. Oh, no. That can't be right? No, that's not correct, Your Honor. The documents could come in. They just can't come in for the truth of the matter asserted, and then you have to prove the embezzlement by indirect means. There are a couple of ways this can be done, by the way. I don't want to try to prosecute the case, of course, but... I mean, for example, if it doesn't come in... You know, let's say the bank's financial... the bank's internal controls had worked the way they should have worked and tellers weren't sharing windows. These cash-out slips could have come in as a statement of a party opponent for the truth of the matter asserted, but when you have tellers sharing teller windows and you don't know who prepared that particular cash-out slip, then it can't come in as an admission of a party opponent. That's the easy way to prove the case if the bank's financial or internal controls don't break down. The other way it can be proven is to do a reconciliation on the days at issue between the branch's overall cash position and the cash position of the individual tellers. In other words, the cash in the vault plus the cash balances of the tellers ought to equal the total cash on hand at the bank in those days. You're trying to figure out alternative ways of doing things, and in some respects, when I read your brief, I was trying to understand whether you were trying to argue the weight of the evidence versus the admissibility. I'm confused on all that. And lastly, it appears to me that in every transaction, and you helped me on this one, your client's initial appears on one of those documents. The money never got out until your client initialed it. Is that correct? Not on all the documents, Your Honor. No, I'm talking about the cash-out slip. Oh, no. My client's initials do not appear on the cash-out slip. What appears on the cash-out slip is the teller window that the cash-out slip goes through. But his initial appears at the final end of each transaction. No matter how many documents you want to get, those documents come to a point where your client, by his initial, approves how it happened, regardless of what the documents are. No, Your Honor, those initials, whether those initials were my client's handwriting, were disputed at trial. Well, that's another issue. Yeah, that's another issue. And this is not before us today. I'm saying every transaction of all those papers that were brought in, finalized in, according to the government's case, with your client initialing something that caused the cash to be released. No, Your Honor, the government's position is that that's my client's initial. No, that's a fact, isn't it? It's not, Your Honor. Well, let's say they're not your client's initials, but AP appears. Do you agree with that? AP appears, yes, yes. What's your client's name? Albert Parris. You never raised the issue on this appeal that that's not your client who initialed those or who authorized those, so I don't know that that's going to be an issue in our appeal. You're contesting the admissibility of these for evidence, and what I'm asking you is if those are your client's initials, those initials enable the transaction to produce cash on an embezzlement, period. Your Honor, I think what I hope the Court understands is that there was evidence from which the jury, and I've got to get beyond this point. I agree. Again, I'm back in your brief here arguing the case of the jury. We're not the jury. We're looking back to see only whether or not this evidence can be considered by the jury not to attack the jury. Let me try it from another viewpoint. These cash-out slips all list a teller's cage. If there's evidence before the jury, if the evidence is disputed as to whether those are my client's initials or not, and the jury has to resolve that issue, and then the jury looks at these cash-out slips and says, oh, that's teller number two, and Mr. Parris had signed in as teller number two that day, and they're able to consider that cash-out slip and that statement as teller number two for the truth of the matter asserted, then this dispute over the accuracy of the handwriting, which is there in the trial evidence, is something that the jury perhaps does not consider or gives very little weight to, and what predominates in the case, the crucial evidence, is the fact that on the cash-out slips is this teller window. And it's essential, if we're to understand the consequences of letting this in for the truth of the matter asserted, it's essential we understand that it's disputed, there was disputed evidence, an FBI handwriting expert testified on behalf of my client, the evidence as to whether or not that's his handwriting was disputed. If the jury says, well, I don't know whether it's his handwriting or not, but look, every one of these things went through his teller window, then that, I think, is evidence that the jury cannot overlook, and in fact, these documents, oh, I'm sorry, Your Honor. Since this whole process is done in the ordinary course of business, the keeping of these records, why doesn't the document come in, and then it goes to its weight as to what it really means? All it is is it's a document that says, say, number two, well, what if your client was at the hospital that day? It doesn't necessarily make the document not come in. It just says, couldn't have been Mr. Paris. He was, you know, in the hospital in Washington, D.C. on that day. But the document would come in. So that's why it seems to me that we're merging weight with admissibility. Because as a condition of admissibility under the wording of 8036 of the Federal Rules of Evidence, it says that the institution keeps the document as part of its regular course of business, and the operative word is and, not or. And it's prepared, I'm paraphrasing a bit here, it's prepared, the memorandum or whatever it is is prepared as part of the bank's regular course of business. But if this thing is prepared not in the course of a regular banking transaction with a customer, playing Yahtzee, I mean, they were transacting a cash out. It was part of that transaction. I don't follow you there. I can follow you up to the point where you say, we have this document, but it can't be used for the truth of the matter. But the truth of the matter is, is here's a document that says to, period. It doesn't say your client's guilty. It doesn't say your client took anything. It doesn't say your client had the cash in his hands. What it says is, it came through Tower 2, and the jury's got to decide what that means. And you can bring in, it's not his handwriting. You can say he was on the moon. It doesn't really matter. But you're trying to tell us that those were not prepared by the bank for business purposes for which they represent. That's our position, Your Honor. There's one other point I want to, it sounds as though the court is unlikely to get to this point, but there's one other point I want to make. And that is, when I discuss the prejudicial aspect of this, I did it in the context of non-constitutional error. But as I do point out in the brief, if those documents should not have come in, that's a violation of the Confrontation Clause. And if it is, the court should view it as constitutional error, and it should reverse unless the court is satisfied that the remaining evidence shows guilt beyond a reasonable doubt. And I want to make sure that the court does not overlook that fact. And I see I have 29 seconds left. I doubt if I can rebut anything in 25, but I'll save it in case I can't. All right, thank you. May it please the Court, Counsel? My name is Jane Kirk, and I represent the United States on this appeal. I'll get directly to the business records. I agree with the question, the direction that the questions appear to be taken from this Court. But these are business records. They were prepared in the normal course. Yes, they were implicated in an embezzlement scheme. But even if that's taken into consideration and that raises a question as to these documents, the court, the trial court had other evidence in front of it to show that these documents were reliable. And I would refer the Court to McIntyre, United States v. McIntyre, 997, Fed Seconds at page 700, that if there are other assurances of accuracy, then these business documents can come in no matter what the motive of the person preparing them. And there were a multitude of assurances of accuracy. These cash-out tickets were relied on by the teller at that window that day to make sure that the teller cashed balance at the end of the day because the machine is making a record of all the cash that's coming in and going out. This cash-out record is part of the cash that's going out of the drawer. The machine at the end of the day totals up and says, this is how much cash you should have in your drawer. And the tellers physically count the cash at the end of the day. And it has to match up. As I understand your argument, these business records show the trail of the cash. Yes. They don't say flat out the defendant Paris took it. They just show the trail. You then got to prove that it was, of course, an embezzlement, which is the next question. Yes. So all you're trying to show is a business record trail with these documents. Yes. Not for the truth of the matter that this guy stole the money or took it. Not that he stole them, but the truth that, yes, it came out of this window. Yes, this amount of cash left that window. That's what those records showed. And then we had to tie that window to the defendant. And unless there are other questions of the court, thank you very much. No rebuttal, Your Honor. Thank you, Mr. Cole. The case of United States v. Paris is submitted.
judges: B Fletcher, Brunetti, McKeown